IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LOBO WELL SERVICE, LLC, a Utah limited liability company,<br><br>      Plaintiff,<br><br><br><br><br>             vs.<br><br><br>MARION ENERGY, INC., a Texas corporation,<br><br>       Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO EXCLUDE EXPERT TESTIMONY<br><br><br><br><br><br>Case No. 2:07-CV-273 TS |

This matter is before the Court on three motions to exclude expert testimony: Plaintiff

Lobo Well Service, LLC's ("Lobo Well") Motion To Exclude or Limit Expert Testimony of

Jerry K. Treybig;[1] Defendant Marion Energy Inc.'s ("Marion") Motion to Exclude Expert

Testimony of Marc T. Eckels;[2] and Marion's Motion to Exclude Expert Testimony of Kenneth B.

Allen.[3]

---

[1]Docket No. 235.

[2]Docket No. 251.

[3]Docket No. 249.

1

Lobo Well argues that Treybig's opinions violate Rules 402, 403, 702, 703, and 704 of the Federal Rules of Evidence. It also argues that Treybig's Declaration was untimely. Marion argues that Allen's report opines to general knowledge and does not provide sufficient information for the opinions to constitute valid expert opinions. Additionally, Marion argues that the Eckels report contains excessive information that would constitute factual evidence and his testimony would confuse the jury. None of the parties challenge the expertise of the proposed witnesses, and the Court finds that all of the opinions are reliable. The parties' concerns can be properly addressed through rigorous cross examination at trial and the parties' own expert testimony. Therefore, in large part the Court denies all three motions. However, the Court does exclude the conclusion found in Treybig's Opinion No. 3, that Marion should not be charged for specific down-time because the statement is a legal conclusion.

## I. LEGAL STANDARD

"'Expert testimony is properly admitted if the subject matter is closely related to a particular profession, business or science and is not within the common knowledge of the average layperson.'"[4] FED.R.EVID. 702 governs the admissibility of expert testimony. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

---

[4]*United States v. Batton*, 602 F.3d 1191, 1201 (10th Cir. 2010) (quoting *United States v. Kunzman*, 54 F.3d 1522, 1530 (10th Cir. 1995)).

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[5]

The rule applies to expert testimony based both on scientific knowledge and, as in this matter, on specialized knowledge.[6] An expert's testimony should not be "treated more permissively simply because it is outside the realm of science."[7] It is clear from the rule itself that expert testimony may be based on "experience alone—or experience in conjunction with other knowledge, skill, training or education."[8] Formal training is not required.[9] However, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[10]

Rule 702 "affirms the trial court's role as a gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert

---

[5]FED.R.EVID. 702.

[6]FED.R.EVID. 702 advisory committee's note (2000 Amendment); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

[7]FED.R.EVID. 702 advisory committee's note (2000 Amendment) (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997)).

[8]*Id.* (citing *United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997)).

[9]*See Agee v. Purdue Pharm., Inc.*, 2004 WL 5352989, at *2 (W.D. Okla. Nov. 22, 2004) (citing *United States v. Proctor, Nos. 97-5242, 97-5246*, 1998 WL 812057, at *4 (10th Cir. Nov. 23, 1998)).

[10]FED.R.EVID. 702 advisory committee's note (2000 Amendment) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995)).

testimony."[11]  The trial court must demonstrate that it performed its gatekeeping function by making specific findings on the record.[12]  "Specifically, the court 'must first determine whether an expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, if the court determines that a witness is qualified, it must then determine whether her opinions are reliable.'"[13]

Arguments that speak to the weight that should be afforded expert testimony do not affect the admissibility of the testimony under Rule 702.[14]  It is the jury's role to determine the weight expert testimony should be given.[15]  The clear distinction between weight and admissibility is demonstrated in *Compton v. Subaru of America, Incorporated*, where the Tenth Circuit affirmed a district court's decision to admit expert testimony in spite of the court's "extremely low opinion of [the expert's] credibility" because the testimony satisfied Rule 702.[16]

---

[11]*Id.*

[12]*United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011); *United States v. Roach*, 582 F.3d 1192, 1207 (10th Cir. 2009).

[13]*Yeley-Davis*, 632 F.3d at 684 (quoting *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009)).

[14]*McDonald v. N. Am. Specialty Ins. Co.*, 224 Fed. Appx. 761, 767 (10th Cir. 2007) (collecting cases).

[15]*McCoy v. Whirlpool Corp.*, 287 Fed. Appx. 669, 679 (10th Cir. 2008) ("Maintaining the distinction between a court's reliability determination under Rule 702 and a sufficiency or merits determination is 'indeed significant as it preserves the fact finding role of the jury.'" (quoting *In re TMI Litig.*, 193 F.3d 613, 665 n.90 (3d Cir. 1999))).

[16]82 F.3d 1513, 1520 (10th Cir. 1996) *overruled on other grounds by Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 & 149 (1999).

Rules 402 and 403 govern the admissibility of evidence based on relevance and prejudice. Under Rule 402, all relevant evidence is admissible unless it is excluded by a rule or by law. Rule 403 permits the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Rule 703 permits an expert to base her opinion on facts perceived by others or on data made known to the expert as long as experts in the particular field would rely on such facts and data. The facts and data need not be admissible for an expert to rely on them.[17] Rule 704 states, in pertinent part: "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

## II. TREYBIG MOTION

Lobo Well claims that Treybig's expert reports are inadmissible under Federal Rules of Evidence 702, 402, and 403, and thus his testimony should be excluded. Lobo Well also seeks an order precluding Treybig from testifying as to any opinion not included in his report, namely the opinions set forth in Treybig's Declaration that are not supported by his report. The thrust of Lobo Well's Motion is that Treybig's opinions are neither reliable nor relevant, rather than that he lacks proper expertise.

A.      BACKGROUND

Initially, the discovery deadline in this matter was April 4, 2008. However, after several modified scheduling orders, expert reports were due on November 23, 2009, and rebuttal reports were due December 22, 2009. Expert discovery closed on March 5, 2010. While discovery may

---

[17] Fed.R.Evid. 703.

have been limited to new issues raised in the Amended Complaint, the Scheduling Order is somewhat ambiguous on this point.

Treybig submitted his expert report on March 25, 2008.[18]  The report contains eleven opinions.  Treybig submitted his supplemental report on April 30, 2008,[19] after he inspected the rig at issue in this matter.  It contains seven opinions.  Treybig was deposed by Lobo Well on March 5, 2010.  On April 23, 2010, Treybig filed a Declaration in Support of Marion's Memorandum in Opposition to Lobo Well's Motion for Partial Summary Judgment.[20]

B.      OPINIONS IN TREYBIG'S REPORTS

Overall, Lobo Well argues that each of Treybig's opinions in his report "lacks adequate foundation, constitutes an improper attempt to interpret (or ignore) the parties' contract, usurps the role of the jury, or simply restates evidence that Marion must present through its fact witnesses."[21]  Marion responds that experts can rely on evidence not gained through personal perception, can testify about contract interpretation, can testify about an ultimate issue in a case, and must meet the relatively low standard of relevance.[22]  The Court will analyze the opinions in the same manner, some individually and other as a group, that the parties did in their memoranda.

---

[18]Docket No. 236, Ex A.

[19]*Id.*, Ex. C.

[20]*Id.*, Ex. E.

[21]Docket No. 236, at 19.

[22]Docket No. 238, at 14-15.

1.      *Opinion 1*

Treybig's Opinion 1 addresses Lobo Well's alleged material misrepresentation

concerning the strength and condition of the drill pipe it furnished to Marion.[23]  Lobo Well

argues that testimony based on the Opinion is inadmissible on four grounds.  First, Lobo Well

disagrees with Treybig's conclusion and challenges that it is not "based on reliable principles and

methods."[24]  Second, the jury can simply read the inventory sheet itself, and expert testimony is

not proper because it is not necessary to understand the document.  Third, the opinion is

irrelevant because Marion has not shown it was damaged by the quality of the drill string.

Fourth, testimony that Lobo Well had "'misrepresented' the dimensions of its tool joints" would

constitute a legal conclusion that would usurp the role of the jury.

Marion responds by arguing that Lobo Well is simply trying to prevent evidence on one

of the principal disputed facts in this case.  Lobo Well further argues that expert testimony is

permissible to describe a technical term in a contract and is permissible when a contract is

ambiguous—which is the case here.  Additionally, Lobo Well asserts that the issue of the quality

of the pipe and what the contract required is clearly relevant and that Opinion 1 is not an

improper legal conclusion.

Lobo Well's first three arguments lack merit. The quality of the drill string may play a

role in the jury's determinations and expert testimony on the subject may be helpful to the jury.

---

[23]Docket No. 236, Ex A, at 2.

[24]*Id.* at 20.

Regarding the legal conclusion argument, "[g]enerally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts."[25]  In making this determination a court may consider whether the expert is merely seeking to explain one party's intent in forming a contract or, in contrast, if the expert explains what he thought the party was doing in light of his experience in a specialized field.[26]  Additionally, a court may consider whether the expert improperly states conduct was merely tortious, merely states legal conclusions, or testifies as to legal elements necessary to establish tortious activity.[27]  Overall, a court must protect a jury from being "'prevailed upon to abdicate its function or responsibility for reaching an independent judgment on the ultimate issue in the case.'"[28]  Additionally, a court must protect its sphere of influence and ensure that an expert does not instruct a jury as to the law.[29]

In Opinion 1, Treybig concludes that "based on the available evidence, Lobo Well Service materially misrepresented, in their contract with Marion, the strength and condition of the drill pipe that they furnished on Rig No. 100 while drilling Marion's wells."[30]  Treybig

---

[25]*Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998).

[26]*Id.*

[27]*Id.*

[28]*Id.* (quoting *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987)).

[29]*Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 919 (6th Cir. 1991).

[30]Docket No. 236, Ex. A, at 6.

supports this conclusion through an explanation of the classification of pipe, what constitutes premium pipe in the industry, and an analysis of results from an inspection report.

The Court finds that Treybig's conclusion is an admissible opinion on a key issue and not a legal conclusion. Treybig's conclusion treads the line between opining on an ultimate issue and drawing a legal conclusion. However, he does not opine that the material misrepresentation constitutes a breach of contract, nor does he describe the legal elements of breach of contract. He simply concludes, after examining the evidence, that the contract contains a misrepresentation. Under the Rules, Treybig may state that there is a difference between what was represented would be supplied and what actually was supplied. Thus, the Court finds Opinion 1 permissible, but cautions Marion to ensure Treybig does not offer legal conclusions in his testimony at trial.

2. *Opinion 2*

Opinion 2 concludes that the drill strings used in Marion's operations "suffered an extraordinary amount of damage" caused by "a serious lack of knowledge and poor operating practices."[31] Lobo Well argues the opinion is based on speculation because Treybig openly admits he cannot specify what actually caused the damage and the conclusion is not supported by testing. Marion responds by asserting the conclusion is the result of studying deposition testimony regarding the working operations at the well and studying drilling reports. Thus, it is not speculation, and, while contrary evidence may exist, it is not sufficient to warrant precluding Opinion 2.

---

[31]*Id.* at 7.

The Court does not exclude testimony based on this opinion. "[T]esting is not necessary in all instances to establish reliability under *Daubert*."[32] The need for testing is obvious "[w]hen an expert proposes a theory that modifies otherwise well-established knowledge about regularly occurring phenomenon."[33] Opinion 2 is not based on any new theories, and testing is likely not practical in this instance where Treybig bases his opinion on his extensive experience with oil drilling and not on his time in a laboratory.

Lobo Well also argues that case law requires an expert to rule-out alternative explanation of causation. The case law does require an expert to consider alternative explanations of causation, but it does not require that the expert must exclude all other potential causes.[34] Lobo Well only specifically raises one alternative that Treybig failed to consider, namely Marion's giving instructions "that exceeded the capabilities of 3-1/2 inch drill pipe."[35] Failure to consider one specific alternative explanation of causation does not justify excluding expert testimony.[36]

---

[32]*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1236 (10th Cir. 2004).

[33]*Id.* at 1235.

[34]*Id.* at 1238 n.6 (quoting Stephen A. Saltzburg et al., Federal Rules of Evidence Manual 702-33 (8th ed. 2002)).

[35]Docket No. 247, at 6.

[36]*See Goebel v. Denver and Rio Grand W. R.R. Co.*, 346 F.3d 987, 999 (10th Cir. 2003) (finding a district court did not abuse its discretion in finding that an expert's "failure to exclude explicitly one alternative . . . did not affect the admissibility of the testimony, although it was an issue the fact finder could consider when assigning weight").

Rather, failure to raise a specific alternative explanation goes to assigning weight to the testimony and is appropriately addressed through cross examination at trial.[37]

In sum, Lobo Well merely disagrees with Opinion 2's conclusion. This disagreement does not warrant exclusion. Lobo Well's concern will best be handled by aggressive cross examination and Lobo Well's own expert testimony.

3.    *Opinion 3*

Opinion 3 analyzes Lobo Well's daily drilling reports and draws three conclusions. First, "the loads applied to the drill string by the Lobo drilling crews were excessive enough to cause serious damages to the drill string."[38] Second, the "total amount of time spent as a result of drill string damages . . . was 670.0 hours, or approximately 27.9 days."[39] Third, "[n]one of this [670 hours] should be charged to Marion."[40]

Lobo Well argues that the final conclusion as to who is responsible for the down-time is a legal conclusion and not proper expert opinion. It also argues, based on its Opinion 2 arguments, that Treybig cannot testify as to the cause of the down-time. Lastly, it argues that merely reviewing daily reports and calculating down-time is not properly presented by an expert. Marion responds by arguing that Opinion 3 would "assist the jury in defining less-than-clear

_____

[37]*See id.*

[38]Docket No. 236, Ex. A, at 19.

[39]*Id.* at 24.

[40]*Id.*

scientific and technical aspects of a contract."[41]  Additionally, Marion argues that the opinion may be helpful to the jury on the non-contractual claims if the jury finds there is no valid contract.

The Court finds there is no reason to exclude an expert reviewing daily logs and calculating down-time or opining as to what caused damage to the drill string.  Treybig's conclusion that Marion should not be charged for the down-time, on the other hand, is problematic.  In this instance, Treybig crosses the line and improperly draws a legal conclusion.  Thus, this conclusion shall be excluded and Treybig may not testify that Marion should not be charged for the down-time.

4.    *Opinions 4-11*

Lobo Well argues that Opinions 4-11 are not admissible because they involve Treybig's drawing legal conclusions as to Lobo Well's duties under the contract.  Marion responds by repeating its response to Lobo Well's Opinion 3 arguments.

Treybig will be permitted to testify in trial as to Marion's duties under the contract.  The contract at issue closely resembles contracts typically used in the oil and gas industry, and Treybig has expertise in the industry.  His opinions may aid the jury in determining whether either party breached the contract and whether a contract existed.  While Treybig will not be permitted to testify as to contract law or contract interpretation, he should be permitted to testify as to what the contract requires according to industry norms.  Lobo Well does not put forward any argument that Opinions 4-11 contain such improper legal instructions.

---

[41]Docket No. 238, at 19.

5.      *Opinion 5 and Supplemental Opinions 1-4*

Opinion 5 provides contractual analysis based on industry contracts generally and the

specific contract at issue.  It concludes that Lobo Well "failed to perform many of its obligations

to Marion," and lists the alleged failures.[42]  The supplemental opinions were submitted after

Treybig inspected the oil rig.  Supplemental Opinions 1-4 conclude: Lobo Well overstated the

horsepower rating for the mud pump engines,[43] the performance of the mud pumps "was far

below" what the drilling contract represented,[44] "the pumps did not supply a sufficient fluid rate

to adequately clean the hole,"[45] and the triplex pump was not a Gardner-Denver PZ7 pump as

represented in the contract.[46]

Lobo Well challenges the opinions insofar as they speak to the purported carelessness of

Lobo Well's crews because they lack foundation and merely regurgitate statements made by

Marion personnel and thus would not constitute proper expert testimony.  Additionally, Lobo

Well challenges Treybig's qualifications "to give expert testimony about the mechanical

capabilities and performance of Lobo's mud pumps and the engines that powered them" because

---

[42]Docket No. 236, Ex. A, at 25-27.

[43]Docket No. 236, Ex B, at 1-2.

[44]*Id.* at 2.

[45]*Id.* at 4.

[46]*Id.*

his expertise is only derived from working with mud pumps and evaluating rigs and rig equipment.[47]

Marion responds that the opinions are based on an assimilation of all of the evidence, and not just on Marion employee statements. It also argues that Treybig is a certified expert and that he clearly relied on his expertise in writing the opinions. Lobo Well did not respond to these arguments in its Reply Memorandum.

The Court will not exclude these opinions. Lobo Well has not presented any valid reason to exclude Opinion 5 and Supplemental Opinions 1-4. Treybig's opinions regarding Lobo Well employee carelessness are admissible as addressed above. Also, Treybig's qualifications as an expert on oil rigs—something that Lobo Well does not dispute—qualifies him to opine as to the mechanical aspects of oil rigs. Again, Lobo Well's concerns on this issue will be properly addressed through aggressive cross examination and Lobo Well's own expert testimony.

6. *Supplemental Opinions 5-7*

Supplemental Opinion 5 concludes that "[t]he drill pipe that Lobo furnished . . . was not as was represented in their contract with Marion."[48] Lobo Well argues that this opinion should be excluded because Marion cannot show the pipe Treybig inspected was the same pipe used in drilling the rig at issue. Marion responds that the pipe Treybig inspected was stacked in Lobo Well's yard and that Lobo Well represented to Marion's attorneys, Treybig, and T.H. Hill that it was the pipe at issue in this case. Lobo Well does not dispute this in its Reply Memorandum.

---

[47]Docket No. 236, at 26.

[48]Docket No. 235, Ex. B, at 5.

Supplemental Opinion 6 states that a Lobo Well representative mischaracterized the pipe at issue in deposition testimony and that it could not have been new pipe at the time the project began. Lobo Well addresses this issue in a single sentence and argues the opinion is "flatly irrelevant." The Court finds the age of the pipe is relevant to the issue of breach of contract.

Supplemental Opinion 7 briefly states the paramount importance of drill pipe and mud pumps in drilling and states that having lower quality pipe and pumps would make drilling less efficient. Lobo Well argues, again very briefly, that the opinion is conclusory and speculative because it addresses the cause of the inefficiency. The Court disagrees.

Based on the discussion above, the Court will not exclude testimony based on Supplemental Opinions 5-7.

7.    *Rebuttal Report*

For the same reasons stated above, Lobo Well seeks exclusion of Treybig's rebuttal report. The Court denies this request based on the discussion above.

8.    *Conclusion* as *to the opinions in the expert reports*

In conclusion, Lobo Well's concerns will be addressed through rigorous cross examination and the testimony offered by its own experts. The Court denies Lobo Well's Motion to exclude as it pertains to the individual opinions in Treybig's reports with the exception that Treybig shall not testify that Marion should not be charged for downtime as stated in Opinion 3.

C.    INFORMATION NOT INCLUDED IN TREYBIG'S REPORTS

Lobo Well moves for an order excluding certain opinions offered by Treybig in a

Declaration filed in support of Marion's opposition to Lobo Well's motion for partial summary

judgment on April 26, 2010.  In arguing this issue, the parties incorporate the arguments made in

the briefing for Lobo Well's Motion to Strike Portions of the Declaration of Jerry K. Treybig,[49]

which the Court denied as moot.[50]  The Court denies this portion of Lobo's Motion.

Lobo argues that the Declaration contains new opinions not included in Treybig's reports

and thus should be barred under Fed.R.Civ.P. 37(c)(1)—which bars expert testimony not derived

from an expert report "unless the failure [to disclose] was substantially justified or harmless."

Additionally, Lobo Well argues that paragraphs five, seven, and twelve "raise new arguments on

the scienter issue that Marion did not disclose when it answered" Lobo Well's interrogatory

asking Marion "to identify the basis for its assertion that Lobo acted 'recklessly' in allegedly

misdescribing Lobo's drill string."[51]  Marion's answer did not address industry standards "or any

purported requirement that a drill string purchaser verify the accuracy of his invoices or obtain

independent inspections."[52]  Lastly, Lobo Well argues that paragraph ten is inadmissible because

---

[49]Docket Nos. 182, 183, 192, & 198.

[50]Docket No. 218.

[51]Docket No. 183, at 8.

[52]*Id.*

Treybig "provides no basis for his conclusion that '9 of the 53 lengths' of this pipe had tool joints of less than 4-5/8 inch."[53]

Marion responds by arguing that the opinions in Treybig's Declaration are "appropriate supplementation and elaboration of his earlier expert reports."[54] Specifically, Marion argues that the paragraphs, offered in response to arguments raised by Lobo Well when it moved for summary judgment, supplement and elaborate the overall theme of the expert reports—that "equipment and personnel provided by Lobo were insufficient and did not meet expected or relevant standards."[55] In making this argument, Marion does not cite to specific opinions from the expert reports, but merely their overall theme. Marion also argues that the opinions do not harm Lobo Well because Lobo Well was aware of them several months before trial. Thus, Marion argues, there will be no surprise and Lobo Well can sufficiently prepare to cross examine Treybig.

Fed.R.Civ.P. 26(a)(2) requires that an expert disclose the opinions he will testify to in an expert report. Supplemental reports are required when an expert determines that he will testify to additional information and opinions.[56] Supplemental reports must be filed prior to the due date of a party's pretrial disclosures.[57] Rule 37 bars expert testimony that is not based on information

---

[53] *Id.* at 9.

[54] Docket No. 192, at 2.

[55] *Id.* at 5.

[56] Fed.R.Civ.P. 26(e); *see Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1332 (10th Cir. 2004).

[57] Fed.R.Civ.P. 26(e)(2).

in a previously disclosed report or supplement as required under Rule 26 "unless the failure was substantially justified or is harmless."[58]  In the Tenth Circuit, portions of an expert's testimony will only be disallowed if an expert's violation of Rule 26 "*substantially* . . . interfer[s] with the aggrieved party's ability fully and fairly to prepare for and proceed at trial."[59]  In considering whether the Rule 26 violation was substantially justified or harmless—in other words whether the testimony should be barred—a "court should consider the following factors: '(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.'"[60]

The Court need not decide whether Treybig's Declaration violates Rule 26 because, even if it does, Lobo Well has failed to show that any violation is not substantially justified or harmless.  The Declaration was filed in April 2010.  Trial in this matter is scheduled for April 2011.  Thus, Lobo Well will have known of the opinions in the Declaration for a year prior to trial.  There will be no surprise and Lobo Well can effectively cure any prejudice resulting from the opinions through effective cross examination.  Treybig's testimony on the opinions will not disrupt trial, but rather will provide the jury with key information in this matter.  Lastly, there is no evidence of bad faith or willfulness on Marion's part.  Thus, Lobo Well's Motion is denied

---

[58]FED.R.CIV.P. 37(c)(1).

[59]*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (emphasis in original).

[60]*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Woodworker's Supply, Inc.*, 170 F.3d at 993).

insofar as it seeks to exclude opinions from paragraphs four, five, seven, ten, and twelve of Treybig's Declaration.

In addressing Lobo Well's additional argument as to paragraph ten, the Court agrees with Marion that as long as proper foundation is laid, Treybig is competent to testify as to the measurements of the tool joints as found in the inspection reports and Lobo Well may address any perceived discrepancy in this statement in cross examination.

Finally, the Court finds Lobo Well's arguments as to Marion's response to its Interrogatories unconvincing. The point of holding trial is for the parties to present information to a jury so it can make factual determinations. Barring expert testimony due to a parties' potentially contradictory answer in an interrogatory would be an overly rigid application of the rules of evidence.[61]

D.     TIMELINESS OF TREYBIG'S SUPPLEMENTAL REPORT

Lobo Well argues that Treybig's supplemental report—filed in May 2008—was untimely because it was filed after the deadline for expert disclosures had closed. However, as stated in the previous section, an expert has a duty to supplement his reports and may do so until pretrial disclosures are due. Additionally, Marion points out that Lobo Well was in possession of the supplement and referred to it in deposing Treybig. The Court sees no reason to exclude the opinions in the supplemental report and denies Lobo Well's Motion insofar as it seeks to do so.

---

[61]*See Miller*, 356 F.3d 1334-35.

### III. ALLEN MOTION

Kenneth Allen is the president of Cochrane Resources, Inc., an oil and gas company and oilfield consultation firm that operated twenty-one oil and gas wells in Utah at the time his report was filed. The expert opinions contained in Allen's report are based on his "oilfield experiences," the fact that Cochrane Resources used Lobo Wells' drilling rig on a job immediately before the rig was used on a well at issue in this matter, and on his review of the depositions and exhibits in this matter.[62]

Marion seeks exclusion of all but one opinion in Allen's report. Marion argues that Allen's opinions are not a basis for expert testimony because they are based on common knowldege and an expert is not needed to aid the jury in understanding the issues Allen addresses. Marion additionally argues Allen's testimony would supplant argument by counsel and that much of his testimony is simply parroting information relayed to him by a "company man" that remained on site during Cochrane's drilling.

The Court finds that Allen's report contains sufficient facts and data to satisfy the requirement of Fed.R.Civ.P. 26(a)(2)(B) to permit him to testify as to information contained in his report and in his supplement, filed as Exhibit D to Lobo Well's Memorandum in Opposition.[63] The opinions in Allen's report are not "within the common knowledge of the average layperson" and are consequently proper expert testimony.

---

[62]Docket No. 250-1, at 2.

[63]Docket No. 259.

As with the other motions to exclude expert testimony filed in this matter, counsel have raised concerns that are properly addressed through rigorous cross examination and their own experts.

## IV. ECKELS MOTION

Marc Eckels is the general manager of Lobo Well and the chief operating officer, director, and vice president of Wind River II Corporation, which is the managing member of Lobo Well. Marion seeks to exclude Eckels from testifying as an expert under Rule 702 and, alternatively, under Rule 403. The crux of Marion's argument is that Eckels's expert report, and consequently his future testimony, "spin[s] the facts, make[s] inappropriate argument [and] offer[s] unsupported conclusions in favor of Lobo under the guise of providing expert testimony."[64] Marion does not offer a serious challenge to Eckels's credibility or reliability. Yet, it does ask the Court to exclude Eckels' testimony due to his report's mingling of information that would consist of both factual and expert testimony. Alternatively, Marion argues that, under Rule 403, Eckels should only be permitted to testify as a lay witness, because the mixture of factual and expert testimony makes the risk of juror confusion so high that it substantially outweighs any probative value of his expert testimony.

Lobo does not dispute that Eckels's report mixes material that would constitute both expert and factual witness testimony. It argues that Eckels, as an employee of Lobo, was not even required to file an expert report, but did so out of courtesy to Marion. (Marion does not

---

[64]Docket No. 261, at 3.

challenge that Eckels was not required to file a report.)[65]  Lobo foresees Eckels's testimony as largely factual and at times stating his expert opinion as to the specific facts and events relevant to this case.

The Court finds that Marion has not provided a legal basis to exclude Eckels's testimony. There is no showing that any expert testimony in his report is not "based upon sufficient facts or data . . . [or] the product of reliable principles and methods."[66]  Also, there is no evidence that Eckels has not "applied the principles and methods reliably to the facts of the case."[67]  The cases cited by Marion do not provide an example where a court excluded expert and/or factual testimony of an expert whose expertise is not challenged and who has personal knowledge of the events at issue.

Regarding its alternative argument, Marion has not shown that the probative value of Eckels' testimony would be substantially outweighed by juror confusion.  Indeed, there is no reason to believe a jury cannot understand the difference between expert and factual testimony and grant each type of testimony the weight the jury feels is appropriate.  In testifying at trial, counsel for Lobo Well should be careful to distinguish questions regarding facts from those regarding expert opinion.  However, as long as the questions are asked in a manner to clearly inform the jury of the type of testimony, then Eckels' testimony is permissible.  Marion can

---

[65]For a discussion on whether an expert report is required from an employee *see Adams & Assocs., L.L.C. v. Fujitsu Ltd.*, 2010 WL 1064141, at * 3 (D. Utah March 22, 2010).

[66]Fed.R.Evid. 702.

[67]*Id.*

ensure that no jury confusion occurs through raising proper objections and through cross examination at trial.

## IV.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Lobo Well's Motion to Exclude or Limit Expert Testimony (Docket No. 235) is GRANTED IN PART AND DENIED IN PART.  It is further

ORDERED that Marion's Motion to Exclude Expert Testimony of Kenneth B. Allen (Docket No. 249) is DENIED.  It is further

ORDERED that Marion's Motion to Exclude Expert Testimony of Marc T. Eckels (Docket No. 251) is DENIED.

DATED   April 8, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge